## JOHN L. GARDNER, Executor, *vs.* ROBERT HOOPER & others.

In personal property bequeathed in trust, to pay the income to the testator's widow for life, and at her decease to convey the remainder to such of his children or their issue as shall survive her, the husband of a daughter of the testator has an equitable interest, which will pass by an assignment of his property under the insolvent law, during the life of the testator's widow; but the assignees will take subject to an equitable provision for the daughter and her children.

So, in land devised in trust to pay the income to the testator's widow for life, and at her decease to convey the remainder to such of his children or their issue as shall survive her, the husband of a daughter of the testator, after issue born alive, has an equitable tenancy by the curtesy, which will pass by an assignment of his property under the in solvent law, during the life of the testator's widow.

BILL IN EQUITY to obtain the instructions of this court concerning the disposition of certain property held by the plaintiff as trustee under the will of Samuel P. Gardner, his father. The defendants were Horace Gray, Sarah R. Gray his wife, and the assignees in insolvency of the estate of Horace Gray. The parties submitted the case to the decision of the court upon a statement of facts, so much of which as is material to the understanding of the points of law decided was as follows:

Samuel P. Gardner died on the 18th of December 1843, leaving a widow, Rebecca R. Gardner, and five children, two sons and three daughters, of whom the defendant Sarah R. Gray was one, and a will, (which was duly proved,) of which he appointed the plaintiff executor, and trustee for the purposes therein named, and which, besides certain pecuniary legacies, contained the following clause: " All the rest and residue of my estate, after paying any debts that I may owe, I give in trust to my said executor, he to pay the income thereof to my wife during her life, and, at her decease, he to retain one fifth part of said rest and residue of my estate for his own use, and pay and deliver

over the other four parts in equal shares to my other four children. But should any of my children die before my wife, leaving issue living at the time of her decease, I give to such issue the share which the parent would have had, if living. And if any should die before my wife, and without issue living at the time of her decease, I give the share of such to be equally divided, one part to each of my children who may then be living, and one part to the issue of each that may not be living."

Horace Gray and Sarah R. Gray have two sons, one born on the 14th of July 1839, and the other on the 17th of June 1850. On the 24th of November 1847, Horace Gray petitioned a master in chancery for the benefit of the insolvent laws, and a warrant was duly issued, and on the next day notice thereof was published, and on the 7th of December 1847, the defendants Hooper and others were duly chosen assignees of his goods and estate, and an assignment thereof made to them by the master in chancery. Horace Gray is still insolvent to a large amount and has never received from his creditors any release of their debts, nor any discharge therefrom under the insolvent laws; and all the debts now owing from him, except a trifling amount, were incurred before said first publication of notice. On the 11th of December 1853, Rebecca R. Gardner, the widow of Samuel P. Gardner, died.

The residue of the estate of Samuel P. Gardner, remaining in the hands of the plaintiff as trustee under his will, consists of cash, and of shares in the India Wharf, (which shares are made real estate by the act incorporating the proprietors of said wharf, *St.* 1807, c. 79,) one fifth part of which cash and shares respectively the plaintiff has retained to and for his own use, and three fifth parts whereof he has paid and delivered to the three other children of said testator; and the remaining one fifth part thereof is retained by the plaintiff as the share of the defendant Sarah R. Gray, subject to the directions of this court.

The defendants Hooper and others, in their answer, claim, as assignees of Horace Gray, such interest in the property concern

ng which the plaintiff asks the instructions of the court, as Horace Gray was entitled to at the time of said assignment, or as they are entitled to by law.

Horace Gray, in his answer, says that he claims no interest in said property for his own benefit, and that such portion thereof as may be decreed to him will belong to his creditors, and not to himself; and prays that said property may be ordered to be transferred and paid to or for the use of the party or parties in equity entitled thereto; and expresses his readiness to execute all necessary and proper instruments to confirm the right or title of such party or parties.

Sarah R. Gray, in her separate answer, filed by special leave of the court, claims said property as a reasonable and suitable provision for her and her children; and prays that the same may be decreed to be transferred and paid to her sole and separate use, free from the control or debts of her husband.

*R. Fletcher*, for Mrs. Gray. By the will, the plaintiff took the legal title in the residue of the testator's estate; and Mrs. Gray took no present interest therein whatever, but only a contingent interest, dependent on her surviving her mother; if she should not survive her mother, her husband would take nothing, but her whole title would by the terms of the will go to her issue, or to her brothers and sisters and their issue. At the time of the assignment to Hooper and others under the insolvent laws, her mother still living, Mrs. Gray had no vested interest in the residue of her father's estate, and Mr. Gray therefore had no property therein which he could sell, assign or convey, or which could be taken on execution against him, in either the real or the personal estate of which the residue was composed, and no interest in such residue passed to his assignees by the assignment; for it is an elementary principle of law, that a person cannot grant or convey property of which he is not possessed, and to which he has no title. A mere possibility cannot be conveyed. And it is a well established doctrine that assignees in bankruptcy or insolvency take only such rights and interests as the debtor himself had, and could claim and assert, at the time of his bankruptcy or insolvency *Jones* v. *Richardson*, 10 Met. 481. *Moody* v.

*Wright*, 13 Met. 29. *Mitchell* v. *Winslow*, 2 Story R. 638. *Carleton* v. *Leighton*, 3 Meriv. 671, 672. *Shay* v. *Sessaman*, 10 Barr, 434. *St.* 1838, *c.* 163, § 5. Report of Commissioners, Cutler's Insolvent Law, (ed. 1853,) 160. *Sts.* 1 Jac. 1, *c.* 15, § 13 ; 6 Geo. 4, *c.* 16, §§ 63, 64. There is no case, English or American, which holds that a mere contingent or possible interest of the wife will pass by such an assignment. There is a well settled distinction between such an assignment, and a particular assignment for a valuable consideration. A particular assignment of a mere possibility has sometimes been enforced in equity as an agreement to assign ; but to give an assignment in bankruptcy or insolvency such an effect, upon all property which the debtor could have agreed to assign, would be to estop him to acquire any property afterwards.

Upon the death of Mrs. Gardner, Mrs. Gray, being then living, became entitled to one fifth of the residue under the will of her father, which she still holds as a chose in action, which her husband has never reduced to possession, and to which his creditors have not acquired any present right. But if Mr. Gray had any property in this residue, which passed to his assignees, they took it subject to the equities of the wife, and the court, on the subject being brought within their equitable jurisdiction and control, (as this is, by this suit,) will not permit the husband or his creditors to take the choses in action of the wife, without first making a suitable provision for her and her children. *Davis* v. *Newton*, 6 Met. 543. *Gassett* v. *Grout*, 4 Met. 489.

*F. C. Loring*, for the assignees. The assignment in insolvency transferred to the assignees all the right which Mr. Gray would have to the possession of the property upon the determination of the life estate of Mrs. Gardner, provided he and Mrs. Gray should then be living, being the right, upon the happening of that event, to reduce the personal property to possession, and so become the absolute owner of it, and to occupy or take the rents and profits of the real estate for his life. It is not material that the interest of Mrs. Gray, and consequently that of Mr. Gray, were contingent; nor that the assignment was general, and not particular—to assignees for the benefit of creditors,

and not to a special purchaser for a valuable consideration. *Stamper* v. *Barker*, 5 Madd. 157. *Hornsby* v. *Lee*, 2 Madd. 16. *Purdew* v. *Jackson*, 1 Russ. 1. *Honner* v. *Morton*, 3 Russ. 65. *Ellison* v. *Elwin*, 13 Sim. 309. *Drew* v. *Long*, 21 Eng. Law & Eq. R. 340. *Rogers* v. *Acaster*, 14 Beav. 450. *Van Epps* v. *Van Deusen*, 4 Paige, 73. *Siter's case*, 4 Rawle, 468. *Page* v. *Estes*, 19 Pick. 269. *Davis* v. *Newton*, 6 Met. 544. Mr. Gray's interest was not a possibility, but a certain, real interest *in futuro*, to be defeated by only one contingency. Conveyances of much .ess certain and appreciable interests have been enforced and upheld, both in equity and at law. *Hobson* v. *Trevor*, 2 P. W. 191. *Beckley* v. *Newland*, 2 P. W. 182. *Wright* v. *Wright*, 1 Ves. Sen. 409. *Fitch* v. *Fitch*, 8 Pick. 480. *Trull* v. *Eastman*, 3 Met. 123. *Mitchell* v. *Winslow*, 2 Story R. 630. The assignment operated as an actual conveyance of a future interest, or as an agreement to convey it, when and if the time of possession should arrive. The assignees do not deny the right of Mrs. Gray to an equitable settlement out of the personal estate.

SHAW, C. J. It may be convenient to restate, in one view, the dates of the several material events on which the question depends. Mr. Gardner, the testator, died in 1843. The insolvent proceedings in the case of Mr. Gray, and the assignment of his property by the master in chancery to Hooper and the other assignees, occurred in December 1847. Mrs. Rebecca R. Gardner, the testator's widow, died in December 1853.

The first question seems to be, whether the assignees of Mr. Gray, by force of the assignment, took any interest in the residue of the personal property of the testator, then held by the executor in trust. By the will, after certain pecuniary legacies, the testator placed the whole of his real and personal property in trust; and the trusts were, first, to pay the whole of the income to his wife during her life, and at her decease to divide it and pay it over equally to the five children, two sons and three daughters, to their own use respectively. But he added a proviso, that if either of the five children should die in the lifetime of their mother, the widow, then the fifth part of the one so dying should be paid to the issue of such child, if any; otherwise,

to the surviving children, or their issue, if deceased. This rendered the gift to the daughter, Mrs. Gray, so far contingent that, if she should not survive the widow, the amount would not come to her, and, of course, would not come to her husband. And it is contended that, inasmuch as this bequest was a contingent and not a vested remainder, it was a mere possibility, and therefore the husband had no such interest as would pass to his assignees for the benefit of his crèditors, under the very sweeping assignment of all his estate, real and personal, which he could by any way or means have lawfully sold, assigned or conveyed; which assignment, the statute declares, shall be effectual to vest in the assignees all debts due to the debtor, all liens and securities therefor, and all his rights of action for any goods or estate, real or personal, and all his rights of redeeming any such goods or estate. *St.* 1838, *c.* 163, § 5.

Upon this question, the court are of opinion that, at the time of Mr. Gray's insolvency, he had an interest, in right of his wife, a conditional right of action, an equitable right to receive and reduce her share to possession, which was not a mere possibility, but an interest created by the will of her father, in the nature of a present gift of an interest to come into possession at a future time, subject to fail and be defeated in case of the decease of his wife during the life of her mother. That such an interest, though in a certain sense contingent, is an existing interest, which is descendible, transmissible and assignable, is well settled, and upon satisfactory grounds, by the late case of *Winslow* v. *Goodwin*, 7 Met. 363, in which the authorities were carefully collected and most ably reviewed by Mr. Justice Wilde. Instead of repeating the authorities, we refer to that case and the cases there cited, in support of our opinion.

The right and interest which Mr. Gray had, in right of his wife, at the time of his becoming insolvent, we think was an equitable right depending upon a condition or contingency—the decease of the widow before that of her daughter—to demand, collect and receive the fifth part of the residuary personal estate; the contingency happened, the wife did survive her mother, then the reversionary interest became a present interest.

We consider that this equitable right of action passed to the assignees by the assignment; that by the "right of action" mentioned in the statute, the legislature intended all valuable rights actually subsisting, whether absolute or conditional, legal or equitable, which were to be obtained by the aid of any species of judicial process.

But after all, the interest which thus passed to the assignees was but an equitable chose in action; and, by the well known rule of law, the wife's chose in action does not become the absolute property of the husband, until it is reduced to possession by the husband, or by his creditors or others, who in certain cases have a right to reduce such choses in action to possession, to an extent sufficient to satisfy their claims. From the nature of the case, this chose in action could not be reduced to possession before the insolvency; and by the insolvency, and the assignment which followed it, the right of the husband was devested. And Mr. Gray, by his answer, disclaims any purpose or intent to claim this residuary property given to his wife by the will of her father.

But though, in the opinion of the court, the assignees took an interest in the personal property of the wife in the hands of the trustee, yet it was an equitable and qualified interest, to be pursued and recovered only in a court of equity, and therefore they must take it subject to the equitable claim of the wife, for a reasonable allowance for the support of herself and her children. Besides; here the suit having been brought by the trustee, and the assignees having been made defendants, they have come in and claimed such rights as they are entitled to claim as assignees, and submitted themselves to the jurisdiction of the court. We think, therefore, it is eminently a fit case for making such an allowance. The authority of the court to make such allowance is a well established principle of equity, and has been recognized by this court. *Gassett* v. *Grout*, 4 Met. 488. *Davis* v. *Newton*, 6 Met. 542.

In regard to the real estate devised by the will of the testator, consisting of shares in the India Wharf, we think the rights of the parties must be determined by the principles already stated.

It appears that Mr. and Mrs. Gray had issue born before the time of his insolvency. We think therefore that Mr. Gray had an equitable tenancy by the curtesy, depending on no other contingency than that of his wife's surviving her mother ; that such inchoate tenancy by the curtesy, though in some respects contingent, was not a mere possibility, but a subsisting conditional interest, which passed by the assignment, and which gives the net income thereof to the assignees, during the life of the husband.                                      *Decree accordingly.*